Davis, J.,
delivered the opinion of the court:
The plan upon which was constructed the building now ■occupied by the Departments of State, of War, and of the Navy was designed by the plaintiff herein. At the time of pas *413 sage of the act authorizing the building plaintiff was Supervising Architect of the Treasury, and being consulted by the commission provided for in that act, he submitted' plans satisfactory to them, which were adopted, which, at the commissioners’ request, ho perfected, and in accordance with which the building was built. -At the request of the commission plaintiff superintended the construction of the building until 1875, when, severing his connection with the Treasury, he ceased to have further responsibility as to the new building, although requested to continue as superintendent of construction at a salary; a request which he declined.
We shall proceed directly to consider the defense based upon the statute of limitations, assuming (for the sake of argument only) that the relations of the parties were such as to create an implied contract, by which defendants were under obligation to compensate plaintiff for his genius and labor in the production of a design and in the superintendence of the construction. If such a contract ^existed when did the right arise to' sue thereon for a breach of the agreement1? Manifestly not later than the date when plaintiff severed all relation with the work, and that was upon the 1st day of January, 1875. At that time he ceased to be Supervising Architect and ceased to superintend the new building, although he was asked to continue to do so and promised payment therefor from that time on, a promise which had not been made to him when he was a Government officer. Upon January 1, 1875, therefore, plaintiff could have begun an action for any compensation as architect, had such compensation been refused, unless there is in the case some peculiar element presenting an exception to the general rule.
It is urged by the plaintiff that such an exception is here presented in this : That the measure of his recovery is to be found in the rules of the Institute of Architects; that under those rules he could not compute his fee until the building was entirely finished, which was in 1888, and therefore his petition is in time.
The clauses upon which the plaintiff relies as relieving him from the bar of the statute of limitations provide:
“ Until actual estimate is received, the charges are based upon the proposed cost of the works and the payments are received as installments of the entire fee, which is based upon the actual cost. The architect bases his professional charge *414 upon the entire cost to the owner of the building, when completed, including all the fixtures necessary to render it fit for occupation,” etc.
It does not appear that prior to the filing of the petition herein plaintiff asked any compensation for his services, although he must have made estimates of the cost of the building. It is urged, however, that as an architect’s fee is based on the cost, and the actual cost can not be fixed until the building is completed, the cause of action does not arise until that date. This rule would be most unjust to architects if applied in the case of the Cathedral at Cologne, which was finished within this decade, and begun so long ago that all certainty as to the name of the architect is lost; and would work hardship upon the architect of an obelisk like the Washington Monument, which was thirty-seven years growing from corner to cap stone. But if the rule bears the interpretation sought to be placed upon it, still does it form the standard upon which"* any liability on defendants’ part is to be measured ? The rules of architects are made for those in private life; for architects who have a running expense of office rent, of draughtsmen, and of clerks, and stationery, and who are subject to competitive contests; they are made for men engaged in the active struggle and violent competition of business life, for men who have only a percentage of success, whose plans prepared at personal outlay are often declined in favor of those made by their rivals; in short, for men who take the risks of the profession.
On the other hand, the plaintiff was a salaried officer of the Government, not engaged in competition with his brethren in the art; he ran no financial risks, he paid no office rent, his stationery and his draughtsmen were the Government’s. Plaintiff gave the product of his mind and his personal endeavor, but that is not sufficient to bring him within the reason of the prices fixed by the Architects’ Institute. Those rates can justly be held to apply only to architects unsalaried by their employers, who give something more than their personal equation to the result accomplished. The rules do not apply to a case like the one at bar. Plaintiff, then, is not entitled to any exceptions which their clauses, if they governed the case, might give him; he severed his relations with the Government January 1,1875; this action was begun May 4, 1889, and is barred by the statute of limitations.